also continue to anticipate booking orders for one-to-three implanters during the fiscal year.

31. The statements quoted above from the October 22, 2003 press release were false and misleading because they failed to disclose the material facts alleged above, and were materially false and misleading because they failed to disclose and misrepresented the following material adverse facts, among others:

(a) that IBM had reduced its orders for and purchases of 200 mm and smaller size wafers from $2.7 million in Q4 2002 to approximately $1 million in Q4 2003; and

(b) that the Company had no reasonable expectation that it would be able to close on – or "book" – the orders for i2000 implanters from Japanese wafer manufacturers in fiscal 2003 because of the patent issues with IBM, including the lack of any agreement on the terms and conditions of a licensing agreement with IBM which purchasers of the i2000 implanter would be required to enter into as a prerequisite to purchasing an i2000 implanter from Ibis;

(c) that the carrying value of Ibis' 200 mm and smaller size wafer production line was materially impaired and that Ibis would be required to take a material charge to earnings in Q4 2003; and

(d) that as a result of the foregoing, defendants lacked a reasonable basis for their statements concerning the Company's prospects, earnings and value.

32. On November 4, 2003, defendants filed Ibis' Q310-Q. Statements made in the Management's Discussion and Analysis of Financial Condition and Results of Operations ("MD & A"), including the following, were false and misleading:

> In 2002, we introduced the next generation of SIMOX-SOI technology which included our second-generation oxygen implanter (i2000) . . . licensed to Ibis by IBM.

\* \* \*

- 14 -

499890v1
01/07/04 15:03

> Although our 200 mm and smaller wafer size production line is currently underutilized, considering our future plans, current potential business prospects and alternatives, Management believes that we do not have an impairment issue at this time. However, if our future current process cycle (which typically lasts two or three years) or our customer transition to the 300 mm wafer size [happens] sooner than we anticipate, our 200 mm and smaller wafer size production line may become obsolete and we would be required to reduce our income by an impairment loss which would be material.

These statements were false and misleading because they failed to disclose the material facts alleges in paragraphs 20, 21 and 23 above, and were materially false and misleading because they failed to disclose and misrepresented the following material adverse facts, among others.

    (a)    that IBM had reduced its orders and purchases for 200 mm and smaller size wafers from $2.7 million in Q4 2002 to approximately $1 million in Q4 2003; and

    (b)    that the Company had no reasonable expectation that it would be able to close on – or "book" – the orders for implanters from Japanese wafer manufacturers in fiscal 2003 because of the patent issues with IBM, lack of any licensing agreement and the state of the ongoing negotiations;

    (c)    that the carrying value of Ibis' 200 mm and smaller size wafer production line was materially impaired and that Ibis would be required to take a material charge to earnings in Q4 2003; and

    (d)    that as a result of the foregoing, defendants lacked a reasonable basis for their statements concerning the Company's prospects, earnings and value.

### The Truth Emerges

33. On December 15, 2003, as year end approached and defendants knew they would not be able to report any sales of the implanter and would have to write down the value of its 200 mm and smaller size wafer production line, defendants made the disclosure that Ibis' fourth quarter wafer product revenues would be reduced to approximately $1 million, down from $2.7

- 15 -

million in the prior year's fourth quarter, due to reduced purchases by its largest customer (although defendants did not name the customer it is IBM) and that Ibis would be taking a "material charge" due to the impairment of its smaller size wafer production equipment as Ibis was increasing its emphasis on the production of large wafers as the result, in part, of its customer forecasts.

34. On December 15, 2003, defendants filed a Form 8-K with the SEC admitting that there would be no sales of i2000 implanters in Q4 2003 to the Japanese wafer manufacturers and that they now expected to receive order(s) for one to three i2000 implanters sometime in 2004 but that the timing of the orders "is very difficult to predict because the sales require the purchaser to enter into a license agreement with a third party" whose name, although not disclosed by defendants, is IBM.

35. In reaction to the announcement on December 15, 2003, the price of Ibis' common stock fell from a $15.40 per share close on December 12 to a close of $13.20 per share on December 15, 2003 and a closing price of $10.37 on December 16, 2003, on extraordinarily high combined volume of 4.4 million shares, almost 50% of the outstanding shares of Ibis common stock.

## ADDITIONAL SCIENTER ALLEGATIONS

36. As alleged herein, defendants acted with scienter in that defendants knew that the public statements or documents issued or disseminated in the name of the Company were materially false and misleading; knew that such statements or documents would be issued or disseminated to the investing public, and knowingly and substantially participated or acquiesced in the issuance or dissemination of such statements or documents as primary violations of the federal securities laws. Defendants, by virtue of their receipt of information reflecting the true facts regarding Ibis, IBM, its largest customer and owner of the patented technology involved in

the i2000 implanter, and the Japanese wafer manufacturers who ordered implanters, were privy to the material facts alleged herein to have been omitted and misrepresented by defendants in their public statements, alleged herein above.

37. Defendants were motivated to commit the fraud alleged herein so that the Company could complete the October common stock offering, which was critically important to Ibis because it needed working capital, and, at the same time, not scare off potential purchasers of the implanter while defendants desperately tried to negotiate with IBM concerning the patent issues involved in Ibis' efforts to sell the implanter. Defendant Reid, because of the public common stock offering, was not able to sell his personal shares of Ibis during the Class Period.

## Undisclosed Adverse Information

38. The market for Ibis' common stock was open, well-developed and efficient at all relevant times. As a result of these materially false and misleading statements and failures to disclose, Ibis' common stock traded at artificially inflated prices during the Class Period. The artificial inflation continued until the time the market digested the truth regarding the operational and financial problems Ibis was experiencing and had failed to disclose and misrepresented during the Class Period. Plaintiff and other members of the Class purchased or otherwise acquired Ibis' common stock relying upon the integrity of the market price of the Company's common stock and market information relating to Ibis and have been damaged thereby.

39. During the Class Period, defendants materially misled the investing public, thereby inflating the price of Ibis common stock, by publicly issuing false and misleading statements and omitting to disclose material facts necessary to make defendants' statements, as alleged herein, not false and misleading. Said statements and omissions were materially false and misleading in that they failed to disclose material adverse information and misrepresented the truth about the Company, its business and operations, as detailed herein.

40. At all relevant times, the material misrepresentations and omissions particularized in this Complaint directly or proximately caused or were a substantial contributing cause of the damages sustained by plaintiff and other members of the Class. As described herein, during the Class Period, defendants made or caused to be made a series of materially false or misleading statements about Ibis. These material misstatements and omissions created in the market an unrealistically positive assessment of Ibis and its prospects and operations, thus causing the Company's common stock to be overvalued and artificially inflated at all relevant times. Defendants' materially false and misleading statements during the Class Period resulted in plaintiff and other members of the Class purchasing the Company's common stock at artificially inflated prices, thus leading to their losses when the illusion was revealed, and the market was able to accurately value the Company.

### Applicability Of Presumption Of Reliance: Fraud-On-The-Market Doctrine

41. At all relevant times, the market for the common stock of Ibis' securities was an efficient market for the following reasons, among others:

(a) Ibis' stock met the requirements for listing, and was listed and actively traded on the NASDAQ, a highly efficient and automated market;

(b) As a regulated issuer, Ibis filed periodic public reports with the SEC and the NASDAQ;

(c) Ibis regularly communicated with public investors via established market communication mechanisms, including through regular disseminations of press releases on the national circuits of major newswire services and through other wide-ranging public disclosures, such as communications with the financial press and other similar reporting services; and

(d)  Ibis was followed by securities analysts employed by brokerage firms who wrote reports which entered the market.

42.  As a result of the foregoing, the market for Ibis' common stock promptly digested current information regarding Ibis from all publicly available sources and reflected such information in Ibis' stock price. Under these circumstances, all purchasers of Ibis' common stock during the Class Period suffered similar injury through their purchases of Ibis' common stock at artificially inflated prices and a presumption of reliance applies.

## NO SAFE HARBOR

43.  The statutory safe harbor provided for forward-looking statements under certain circumstances does not apply to any of the allegedly false statements pleaded in this complaint. Many of the specific statements pleaded herein were net identified as "forward-looking statements" when made. To the extent there were any forward-looking statements, there were no meaningful cautionary statements identifying important factors that could cause actual results to differ materially from those in the purportedly forward-looking statements. Alternatively, to the extent that the statutory safe harbor does apply to any forward-looking statements pleaded herein, defendants are liable for those false forward-looking statements because at the time each of those forward-looking statements was made, the particular speaker knew that the particular forward-looking statement was false, and/or the forward-looking statement was authorized and/or approved by an executive officer of Ibis who knew that those statements were false when made.

## FIRST CLAIM

### Violation Of Section 10(b) Of
### The Exchange Act And Rule 10b-5
### Promulgated Thereunder Against All Defendants

44.  Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

45.  During the Class Period, defendants, and each of them, carried out a plan, scheme and course of conduct which was intended to and, throughout the Class Period, did: (i) deceive the investing public, including plaintiff and other Class members, as alleged herein; (ii) artificially inflate and maintain the market price of Ibis' common stock; and (iii) cause plaintiff and other members of the Class to purchase Ibis' common stock at artificially inflated prices. In furtherance of this unlawful scheme, plan and course of conduct, defendants, and each of them, took the actions set forth herein.

46.  Defendants (a) employed devices, schemes, and artifices to defraud; (b) made untrue statements of material fact and/or omitted to state material facts necessary to make the statements not misleading; and (c) engaged in acts, practices, and a course of business which operated as a fraud and deceit upon the purchasers of the Company's securities in an effort to maintain artificially high market prices for Ibis' common stock in violation of Section 10(b) of the Exchange Act and Rule 10b-5. All defendants are sued either as primary participants in the wrongful and illegal conduct charged herein or as controlling persons as alleged below.

47.  Defendants, individually and in concert, directly and indirectly, by the use, means or instrumentalities of interstate commerce and/or of the mails, engaged and participated in a continuous course of conduct to conceal adverse material information about the business, operations and future prospects of Ibis as specified herein.

499890v1
01/07/04 15:03

48. Defendants employed devices, schemes and artifices to defraud, while in possession of material adverse non-public information and engaged in acts, practices, and a course of conduct as alleged herein in an effort to assure investors of Ibis' value and performance and continued substantial growth, which included the making of, or the participation in the making of, untrue statements of material facts and omitting to state material facts necessary in order to make the statements made about Ibis and its business operations and future prospects in the light of the circumstances under which they were made, not misleading, as set forth more particularly herein, and engaged in transactions, practices and a course of business which operated as a fraud and deceit upon the purchasers of Ibis' common stock during the Class Period.

49. Reid's primary liability, and controlling person liability, arises from the following facts: (i) he was the most senior officer and Chairman of the Board of Ibis; (ii) he was privy to and participated in the creation, development and reporting of the Company's internal budgets, plans, projections and/or reports; and (iii) he was aware of the Company's dissemination of information to the investing public which he knew or recklessly disregarded was materially false and misleading.

50. Defendants had actual knowledge of the misrepresentations and omissions of material facts set forth herein, or acted with reckless disregard for the truth in that they failed to ascertain and to disclose such facts, even though such facts were available to them.

51. As a result of the dissemination of the materially false and misleading information and failure to disclose material facts, as set forth above, the market price of Ibis' common stock was artificially inflated throughout the Class Period. In ignorance of the fact that market prices of Ibis' common stock were artificially inflated, and relying directly or indirectly on the integrity

of the market in which the securities trade, and/or on the absence of material adverse information that was known to or recklessly disregarded by defendants but not disclosed in public statements by defendants during the Class Period. Plaintiff and the other members of the Class acquired Ibis common stock during the Class Period at artificially high prices and were damaged thereby.

52. At the time of said misrepresentations and omissions, plaintiff and the other members of the class were ignorant of their falsity, and believed them to be true. Had plaintiff and the other members of the Class and the marketplace known of the true financial condition and business prospects of Ibis, which were not disclosed by defendants, plaintiff and other members of the Class would not have purchased or otherwise acquired their Ibis common stock, or, if they had acquired such securities during the Class Period, they would not have done so at the artificially inflated prices which they paid.

53. By virtue of the foregoing, defendants have violated Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder.

54. As a direct and proximate result of defendants' wrongful conduct plaintiff and the other members of the Class suffered damages in connection with their respective purchases and sales of the Company's securities during the Class Period.

## SECOND CLAIM

### Pursuant To Section 20(a) Of The Exchange Act Against Defendant Reid

55. Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

56. Reid was and acted as a controlling person of Ibis within the meaning of Section 20(a) of the Exchange Act, as alleged herein. By virtue of his high-level positions, participation in and/or awareness of the Company's operations and/or intimate knowledge of the statements

filed by the Company with the SEC and disseminated to the investing public, Reid had the power to influence and control and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the various statements which plaintiff contends are false and misleading.

57. In particular, Reid had direct and supervisory involvement in the day-to-day operations of the Company and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same.

58. As set forth above, Ibis and Reid each violated Section 10(b) and Rule 10b-5 by their acts and omissions as alleged in this Complaint. By virtue of his positions as a controlling person of Ibis, Reid is liable pursuant to Section 20(a) of the Exchange Act for Ibis' violation of Section 10(b) of the Exchange Act, as a direct and proximate result of which, plaintiff and other members of the Class suffered damages in connection with their purchases of the Company's common stock during the Class Period.

**WHEREFORE**, plaintiff prays for relief and judgment as follows:

(a) Determining that this action is a proper class action, designating plaintiff as Lead Plaintiff and certifying plaintiff as a class representative under Rule 23 of the Federal Rules of Civil Procedure and plaintiff's counsel as Lead Counsel;

(b) Awarding compensatory damages in favor of plaintiff and the other Class members against all defendants, jointly and severally, for all damages sustained as a result of defendants' wrongdoing, in an amount to be proven at trial, including interest thereon;

(c) Awarding plaintiff and the Class their reasonable costs and expenses incurred in this action, including counsel fees and expert fees; and

(d) Such other and further relief as the Court may deem just and proper.

**JURY TRIAL DEMANDED**

Plaintiff hereby demands a trial by jury.

Dated: January 9, 2004

**SHAPIRO HABER & URMY LLP**

*/s/ Theodore Hess-Mahan*
Theodore Hess-Mahan (BBO#557109)
75 State Street
Boston, MA 02109
Tel: (617) 439-3939
Fax: (617) 439-0134

**GOODKIND LABATON RUDOFF
& SUCHAROW LLP**
Jonathan M. Plasse
Christopher J. Keller
100 Park Avenue
New York, New York 10017
Tel: (212) 907-0700
Fax: (212) 818-0477

- 24 -

## **CERTIFICATION**

I, Fred Den, hereby certify as follows:

1. I am fully authorized to enter into and execute this Certification. I have reviewed a complaint prepared against Ibis Technology Corp. ("Ibis") alleging violations of the federal securities laws and I authorized the filing of this complaint;

2. I did not purchase securities of Ibis at the direction of counsel or in order to participate in any private action under the federal securities laws;

3. I am willing to serve as a lead plaintiff in this matter, including providing testimony at deposition and trial, if necessary;

4. I have transactions in the securities of Ibis as reflected in Exhibit A hereto;

5. I have not sought to serve as a lead plaintiff in any class action under the federal securities laws during the last three years, except for the following:


6. Beyond my pro rata share of any recovery, I will not accept payment for serving as a lead plaintiff on behalf of the class, except the reimbursement of such reasonable costs and expenses (including lost wages) as ordered or approved by the Court.

I declare under penalty of perjury, under the laws of the United States, that the foregoing is true and correct.

Dated: 1/7/04

_____
Fred Den

## EXHIBIT A

## TRANSACTIONS IN
## IBIS TECHNOLOGY CORP.

| TRANSACTION (Purchase/Sale) | TRADE DATE (mm/dd/yyyy) | PRICE (per share) | NO. OF SHARES | TOTAL COST/ PROCEEDS |
|---|---|---|---|---|
| Purchase | 11/12/03 | $13.11 | 100 | $1,311.00 |
| Purchase | 11/12/03 | $13.15 | 200 | $2,630.00 |
| Purchase | 11/25/03 | $14.52 | 100 | $1,452.00 |
| Sell | 12/9/03 | $16.14 | 200 | $3,228.00 |
|  |  |  |  |  |
|  |  |  |  |  |
|  |  |  |  |  |
|  |  |  |  |  |
|  |  |  |  |  |
|  |  |  |  |  |

Additional Transactions:

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

1. TITLE OF CASE (NAME OF FIRST PARTY ON EACH SIDE ONLY) FRED DEN V. IBIS TECHNOLOGY CORPORATION

2. CATEGORY IN WHICH THE CASE BELONGS BASED UPON THE NUMBERED NATURE OF SUIT CODE LISTED ON THE CIVIL COVER SHEET. (SEE LOCAL RULE 40.1(A)(1)).

   ___  I.   160, 410, 470, R.23, REGARDLESS OF NATURE OF SUIT.

   XX   II.  195, 368, 400, 440, 441-444, 540, 550, 555, 625, 710, 720, 730, *Also complete AO 120 or AO 121
             740, 790, 791, 820*, 830*, 840*, 850, 890, 892-894, 895, 950.   for patent, trademark or copyright cases

   ___  III. 110, 120, 130, 140, 151, 190, 210, 230, 240, 245, 290, 310,
             315, 320, 330, 340, 345, 350, 355, 360, 362, 365, 370, 371,
             380, 385, 450, 891.

   ___  IV.  220, 422, 423, 430, 460, 510, 530, 610, 620, 630, 640, 650, 660,
             690, 810, 861-865, 870, 871, 875, 900.

   ___  V.   150, 152, 153.

3. TITLE AND NUMBER, IF ANY, OF RELATED CASES. (SEE LOCAL RULE 40.1(G)). IF MORE THAN ONE PRIOR RELATED CASE HAS BEEN FILED IN THIS DISTRICT PLEASE INDICATE THE TITLE AND NUMBER OF THE FIRST FILED CASE IN THIS COURT.

   SMOLOWITZ V. IBIS TECHNOLOGY CORP., 03CV12613-RCL (Lindsay, J.)

4. HAS A PRIOR ACTION BETWEEN THE SAME PARTIES AND BASED ON THE SAME CLAIM EVER BEEN FILED IN THIS COURT?
   YES ☐    NO X

5. DOES THE COMPLAINT IN THIS CASE QUESTION THE CONSTITUTIONALITY OF AN ACT OF CONGRESS AFFECTING THE PUBLIC INTEREST? (SEE 28 USC §2403)
   YES ☐    NO X

   IF SO, IS THE U.S.A. OR AN OFFICER, AGENT OR EMPLOYEE OF THE U.S. A PARTY?
   YES ☐    NO ☐

6. IS THIS CASE REQUIRED TO BE HEARD AND DETERMINED BY A DISTRICT COURT OF THREE JUDGES PURSUANT TO TITLE 28 USC §2284?
   YES ☐    NO X

7. DO ALL OF THE PARTIES IN THIS ACTION, EXCLUDING GOVERNMENTAL AGENCIES OF THE UNITED STATES AND THE COMMONWEALTH OF MASSACHUSETTS ("GOVERNMENTAL AGENCIES"), RESIDING IN MASSACHUSETTS RESIDE IN THE SAME DIVISION? - (SEE LOCAL RULE 40.1(D)).
   YES X    NO ☐

   A. IF YES, IN WHICH DIVISION DO ALL OF THE NON-GOVERNMENTAL PARTIES RESIDE?
      EASTERN DIVISION  X    CENTRAL DIVISION ☐    WESTERN DIVISION ☐

   B. IF NO, IN WHICH DIVISION DO THE MAJORITY OF THE PLAINTIFFS OR THE ONLY PARTIES, EXCLUDING GOVERNMENTAL AGENCIES, RESIDING IN MASSACHUSETTS RESIDE?
      EASTERN DIVISION ☐    CENTRAL DIVISION ☐    WESTERN DIVISION ☐

(PLEASE TYPE OR PRINT)
ATTORNEY'S NAME Theodore M. Hess-Mahan
ADDRESS Shapiro Haber & Urmy LLP, 75 State St., Boston, MA 02109 617-439-3939
TELEPHONE NO. 617-439-3939

(Den Filing Category Form.wpd - 11/27/00)

%JS 44 (Rev. 3/99)

# CIVIL COVER SHEET

The JS-44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

## I. (a) PLAINTIFFS
FRED DEN, on behalf of himself and all others similarly

## DEFENDANTS
IBIS TECHNOLOGY CORPORATION and MARTIN J. REID

(b) County of Residence of First Listed   OUT OF STATE
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed   Essex
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE LAND INVOLVED.

(c) Attorney's (Firm Name, Address, and Telephone Number)
Theodore M. Hess-Mahan
Shapiro Haber & Urmy LLP
75 State Street
Boston, MA 02109
(617) 439-3939

Attorneys (If Known)

## II. BASIS OF JURISDICTION (Place an "X" in One Box Only)

- ☐ 1 U.S. Government Plaintiff
- ☐ 2 U.S. Government Defendant
- x 3 Federal Question (U.S. Government Not a Party)
- ☐ 4 Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff and One Box for Defendant) (For Diversity Cases Only)

|   | PTF | DEF |   | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT (Place an "X" in One Box Only)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury— Med. Malpractice | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal 28 USC 157 | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 365 Personal Injury— Product Liability | ☐ 625 Drug Related Seizure of Property 21 USC | | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 450 Commerce/ICC Rates/etc. |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 460 Deportation |
| ☐ 151 Medicare Act | ☐ 340 Marine | **PERSONAL PROPERTY** | ☐ 650 Airline Regs. | ☐ 830 Patent | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans) | ☐ 345 Marine Product Liability | ☐ 370 Other Fraud | ☐ 660 Occupational Safety/Health | ☐ 840 Trademark | ☐ 810 Selective Service |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 371 Truth in Lending | ☐ 690 Other | **LABOR** | X 850 Securities/Commodities/ Exchange |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 380 Other Personal Property Damage | | **SOCIAL SECURITY** | ☐ 875 Customer Challenge 12 USC 3410 |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury | ☐ 385 Property Damage Product Liability | ☐ 710 Fair Labor Standards Act | ☐ 861 HIA (1395ff) | ☐ 891 Agricultural Acts |
| ☐ 195 Contract Product Liability | | | ☐ 720 Labor/Mgmt. Relations | ☐ 862 Black Lung (923) | ☐ 892 Economic Stabilization |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 730 Labor/Mgmt.Reporting & Disclosure Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 893 Environmental Matters |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate Sentence | ☐ 740 Railway Labor Act | ☐ 864 SSID Title XVI | ☐ 894 Energy Allocation Act |
| ☐ 220 Foreclosure | ☐ 442 Employment | Habeas Corpus: | ☐ 790 Other Labor Litigation | ☐ 865 RSI (405(g)) | ☐ 895 Freedom of Information Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ Accommodations | ☐ 530 General | ☐ 791 Empl. Ret. Inc. Security Act | **FEDERAL TAX SUITS** | ☐ 900 Appeal of Fee Determination Under Equal Access to Justice |
| ☐ 240 Torts to Land | ☐ 444 Welfare | ☐ 535 Death Penalty | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 950 Constitutionality of State Statutes |
| ☐ 245 Tort Product Liability | ☐ 440 Other Civil Rights | ☐ 540 Mandamus & Other | | ☐ 871 IRS—Third Party 26 USC 7609 | X 890 Other Statutory Actions |
| ☐ 290 All Other Real Property | | ☐ 550 Civil Rights | | | |
| | | ☐ 555 Prison Condition | | | |

## V. ORIGIN (PLACE AN "X" IN ONE BOX ONLY)

- x 1 Original Proceeding
- ☐ 2 Removed from State Court
- ☐ 3 Remanded from Appellate Court
- ☐ 4 Reinstated or Reopened
- ☐ 5 Transferred from another district (specify)
- ☐ 6 Multidistrict Litigation
- ☐ 7 Appeal to District Judge from Magistrate Judgment

## VI. CAUSE OF ACTION
(Cite the U.S. Civil Statute under which you are filing and write brief statement of cause. Do not cite jurisdictional statutes unless diversity.)
Action for attorneys fees and costs under the Individuals with Disabilities Education Act, 20 U.S.C. § 1415(i)(3)(B)

## VII. REQUESTED IN COMPLAINT:
x CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23
DEMAND 0
CHECK YES only if demanded in complaint:
JURY DEMAND:  x Yes   ☐ No

## VIII. RELATED CASE(S) IF ANY
(See instructions):
JUDGE  LINDSAY
DOCKET NUMBER  03CV12613-RCL

DATE  1/9/2004
SIGNATURE OF ATTORNEY OF RECORD  /s/ Theodore Hess-Mahan